Darren M. Geliebter
Eric J. Huang (*pro hac vice pending*)
**LOMBARD & GELIEBTER LLP**
1325 Avenue of the Americas, 28th Fl.
New York, NY 10019
(212) 520-1172 (telephone)
(646) 349-5567 (facsimile)
dgeliebter@lombardip.com
ehuang@lombardip.com

*Attorneys for Plaintiff BHRS Group, LLC*

## UNITED STATES DISTRICT COURт
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BHRS GROUP, LLC,<br><br>                           Plaintiff,<br><br>          v.<br><br>EZ INVENTIONS LLC dba FILTER 123,<br>BRILLIANT INITIATIVES LLC, and SHIMON<br>OESTREICHER,<br><br>                           Defendants. | Civil Action No. 1:26-CV-2460<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff BHRS Group, LLC ("BHRS" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint against Defendant EZ Inventions LLC dba Filter 123 ("EZ Inventions"), Brilliant Initiatives LLC ("Brilliant Initiatives"), and Shimon Oestreicher (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      BHRS brings this action to stop Defendants' ongoing and egregious campaign to undermine BHRS's retail water cooler business and to recover the substantial damages Defendants have inflicted to date. Defendants have copied every aspect of BHRS's intellectual property,

1

including its patented technology and distinctive trade dress, to manufacture and sell knockoff aftermarket replacement water filters for BHRS's water coolers (the "Accused Products," as further defined herein), costing BHRS significant filter sales and market share.

2.      Defendants further falsely represent in their marketing that their filters are compatible with BHRS's Avalon® branded Bottleless Water Coolers. In fact, Defendants' filters are not compatible with BHRS's coolers and frequently cause physical damage to them. That damage has harmed BHRS's reputation because customers who experience it reasonably, but mistakenly, attribute it to manufacturing or design defects in BHRS's coolers, when the damage is actually caused by the incompatibility of Defendants' filters.

3.      Defendants also falsely claim in their marketing that their filters are certified to meet NSF/ANSI Safety Standards 42 and 378. In reality, Defendants' filters are neither NSF nor ANSI compliant, and NSF/ANSI Standard 378 is not a recognized standard. These false certification claims create a serious health risk to consumers and pose an equally serious risk to BHRS's reputation: consumers who become ill after drinking water filtered through Defendants' products may wrongly attribute that harm to BHRS's coolers.

4.      Defendants also falsely claim in their marketing that their filters are patent protected and that they completely remove lead, both of which are untrue.

5.      Permitting Defendants to continue their infringing sales and false advertising, regarding both compatibility with BHRS's coolers and safety certification, threatens serious harm to consumers, damages BHRS's core business and brand, and erodes the goodwill BHRS has built with its customers.

6.      BHRS therefore brings this action under the Patent Act, the Lanham Act and New York common law, seeking permanent injunctive relief and damages arising from Defendants'

2

intentional infringement and misappropriation of BHRS's intellectual property and Defendants' false statements regarding compatibility and safety certification.

**JURISDICTION AND VENUE**

7.    This is an action under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, for infringement by Defendants of U.S. Patent No. 11,123,667 (the "'667 Patent") based upon Defendants' ongoing manufacture, use, sale, importation, offer to sell and/or encouragement of others to do any of the foregoing, within the United States, of the Accused Products before expiration of the '667 Patent (the "Accused Products").

8.    This is also an action for trademark infringement and unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the common law of the state of New York, based upon Defendants' adoption and use of marks confusingly similar to BHRS's trade dress for the configuration of a water filter (the "Water Filter Mark," as further defined herein) and advertising, selling, and offering for sale the Accused Products that infringe BHRS's Water Filter Mark.

9.    Defendants deliberately and willfully undertook this scheme to copy BHRS's intellectual property with full knowledge and in conscious disregard of BHRS's prior intellectual property rights. Defendants' unlawful conduct was designed to take advantage of, and trade on, BHRS's goodwill associated with its Water Filter Mark with the goal of displacing BHRS from the marketplace with a copycat inferior product.

10.    This is also an action for false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) and the common law of the state of New York, based on (a) Defendants' false claims of compatibility with BHRS's Avalon® branded Bottleless Water Coolers; (b) Defendants' false claims of safety compliance, (c) Defendants' false claims of patent

3

protection, and (d) Defendants' false claims of lead removal, all of which have misled hundreds of consumers to purchase filters that do not work with their Avalon® coolers, resulting in harm to BHRS's reputation and business.

11.    This Court has subject matter jurisdiction over the subject matter in the pleadings pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), (b).

12.    This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367 in that those claims are so related to BHRS's federal claims that they form part of the same case or controversy.

13.    This Court has personal jurisdiction over Defendants based, *inter alia*, on Defendants' manufacturing, marketing, and sales of the Accused Products to consumers in the United States, including to consumers in this district. On information and belief, EZ Inventions, Brilliant Initiatives, and Mr. Oestreicher, individually and collectively acting in concert with one another and cooperatively, manufacture, market, and sell the Accused Products to consumers in the United States, including to consumers in this district.

14.    On information and belief, Defendants do substantial business in the State of New York, derive substantial revenue from the State of New York, and engage in other persistent courses of conduct in New York. These continuous and systematic contacts, including but not limited to those described above and below, are more than sufficient for this Court to exercise personal jurisdiction over Defendants.

15.    This Court has personal jurisdiction over EZ Inventions because, on information and belief, it maintains a place of business in this district and regularly transacts business within this district, and has continuous and systematic contacts with Brilliant Initiatives and Mr. Oestreicher in this district in connection with those business transactions, such that this Court's

4

assertion of jurisdiction over EZ Inventions does not offend traditional notions of fair play and substantial justice. On information and belief, EZ Inventions operates a business engaged in the importation, marketing, and sale of the Accused Products from locations within this district and directs the sale of the Accused Products to customers in this district.

16.    This Court has personal jurisdiction over Brilliant Initiatives because it is incorporated in New York, maintains a place of business in this district, and regularly transacts business within this district, including in Kings County, such that this Court's assertion of jurisdiction over Brilliant Initiatives does not offend traditional notions of fair play and substantial justice. On information and belief, Brilliant Initiatives operates a business engaged in the importation, marketing, and sale of the Accused Products from locations within this district and directs the sale of the Accused Products to customers in this district.

17.    This Court has personal jurisdiction over Mr. Oestreicher because, on information and belief, that individual is a citizen of New York who resides in New York and in this district, and is, on information and belief, owner, operator, and/or principal of EZ Inventions and Brilliant Initiatives. On information and belief, Mr. Oestreicher regularly transacts business within this district by directing and controlling the importation, marketing, and sale of the Accused Products in this district and directing the sale of the Accused Products to customers in this district through these entities, such that this Court's assertion of jurisdiction over Mr. Oestreicher does not offend traditional notions of fair play and substantial justice.

18.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b) based on the same contacts and conduct that establish personal jurisdiction over Defendants.

19.    Venue is proper as to Brilliant Initiatives and Mr. Oestreicher because they both reside in this district and have committed acts of infringement here.

20.    Venue is proper as to EZ Inventions because, on information and belief, it has committed acts of infringement in this district and maintains a place of business in this district through its agents, affiliates, and alter ego entities, including through Mr. Oestreicher and Brilliant Initiatives, including operations located in Kings County, New York from which the Accused Products are marketed, distributed, and sold.

21.    Venue is proper as to all Defendants because, on information and belief, they operate as a coordinated enterprise under common ownership and control, including through Mr. Oestreicher, and collectively conduct business from a place of business within this district.

## **PARTIES**

22.    Plaintiff BHRS Group, LLC is a limited liability company organized under the laws of the state of New Jersey with its principal place of business located at 585 Prospect St., Suite 301B, Lakewood, NJ, 08701.

23.    Defendant EZ Inventions LLC dba Filter 123 ("EZ Inventions") is a limited liability company organized under the laws of the State of Delaware with a registered address at 24A Trolley Square, Suite 1131, Wilmington, Delaware 19806, which is a private mailbox. On information and belief, EZ Inventions has a place of business in this district in Kings County, New York at the same place of business as Brilliant Initiatives LLC or at the same address of Defendant Shimon Oestreicher. EZ Inventions is the named seller of the Accused Products on Amazon through its Filter 123 store and is engaged in the marketing, distribution, and sale of the Accused Products in this district.

24.    Defendant Brilliant Initiatives LLC is a limited liability company organized under the laws of the State of New York, with a place of business in Kings County, New York, including at 879 44th Street, Brooklyn, New York 11220. Upon information and belief, Brilliant Initiatives

6

LLC is engaged in the marketing, distribution, and sale of the Accused Products in this district.

25.    Defendant Shimon Oestreicher is an individual who resides at 1415 East 53rd Street, Brooklyn, New York 11219. On information and belief, Mr. Oestreicher is the owner, operator, and/or principal of EZ Inventions LLC and Brilliant Initiatives LLC and directs and controls the sale of the Accused Products in this district through these entities.

**FACTS**

26.    BHRS is a small company of 15 employees founded in 2008 that is an innovative distributor of high-quality consumer appliances for several industry-recognized brands. One of BHRS's best-known brands is its AVALON® A1, A2, A3, A4, A5, A6, A7, and A8 Series of water coolers (the "Avalon Coolers"), which include innovative bottleless and bottle offerings that retail for between $149 and $399, as well as water filtration products. BHRS also sells replacement water filters for its Avalon Coolers as a core part of its business. These water filters are advertised, offered for sale, and sold both as standalone replacement water filter products and also as an integral part of BHRS's Avalon Coolers.

**I.    BHRS's Patented Water Filter Products**

27.    BHRS has invested significant resources in developing technology relating to its water cooler and filter products. This technology is protected by a number of patents, including U.S. Patent No. 11,123,667 (the "'667 Patent").

28.    The '667 Patent, entitled "Water Cooler Filter With Secure Bayonet-type Connection," was duly and legally issued on September 21, 2021, by the U.S. Patent and Trademark Office ("USPTO") and is valid and enforceable and will not expire until at least June 23, 2040. A true and correct copy of the '667 Patent is attached hereto as **Exhibit A**.

29.    The '667 Patent stems from U.S. Application No. 16/004,584 ("the '584

7

Application"), filed on June 11, 2018.

30.     The inventor of the '667 Patent is Jonathan Rubin, who is also the chairman and chief executive officer of BHRS. BHRS is the owner and assignee of all right, title, and interest in the '667 Patent, per assignment by Mr. Rubin.

31.     The '667 Patent claims are directed to a filter for a water cooler.

32.     A representative image from the '667 Patent (Fig. 3) is provided below.



FIG. 3

33.     BHRS markets and sells a water filter under the AVALON® brand (Model No. AVALONFILTER) (the "Avalon Filter") that is protected by the '667 Patent and embodies every element of claim 1 of the '667 Patent.

34.     The Avalon Filter is marked, and at all relevant times has been marked, with the '667 Patent.

## II.    BHRS's Trademarks and Trade Dress in Its Water Cooler and Filter Products

35.     In addition to being patent-protected, BHRS's Avalon Coolers and Filters are also protected by trade dress.

36.     The Avalon Filters for BHRS's Avalon Coolers feature a highly distinctive, non-

8

functional design (BHRS's "Water Filter Mark") that has been used by BHRS exclusively and continuously in the United States on its water cooler and filter products since at least as early as December 11, 2017.

37.    As shown in the drawing below, BHRS's Water Filter Mark consists of a three-dimensional configuration of a portion of a water filter consisting of a blue or black vertically oriented panel extending along the surface of the canister of the water filter.



**Water Filter Mark**

38.    BHRS is the owner of common law rights to the Water Filter Mark dating back to at least as early as December 11, 2017.

39.    BHRS has invested significant time and money to create, develop, advertise, market, and sell its products under its Water Filter Mark.

40.    Since at least as early as the first use date, BHRS has been using, in commerce that Congress may regulate, its Water Filter Mark in connection with its high-quality water cooler and

filter products, including the Avalon Coolers and Filters. Examples of BHRS's Water Filter Mark used in connection with its products, in retail stores, and online, are shown below.



| BHRS's Avalon Filter bearing the Water Filter Mark | BHRS's Avalon Cooler bearing the Water Filter Mark |

41.     In addition to being used on the products themselves, BHRS uses the Water Filter Mark in marketing materials, including in photographs, to advertise and promote BHRS's Avalon Coolers and Filters.

42.     BHRS's Avalon Filters bearing the Water Filter Mark are advertised, offered for sale, and sold both as standalone replacement water filter products and also as an integral part of BHRS's Avalon Coolers.

43.     Like most water filters, BHRS's Avalon Filters bearing the Water Filter Mark are recommended to be replaced after a period of time. Thus, a customer is likely to purchase multiple replacement Avalon Filters bearing the Water Filter Mark across the lifetime of the Avalon Cooler.

44.     BHRS's products bearing the Water Filter Mark are available extensively online, including at Amazon, Home Depot, Lowe's, Walmart, Target, BestBuy, Wayfair, HD Supply, Costco, Sam's Club, Office Depot, QVC.com, MSC Direct, and Quill.

45.     BHRS has invested significant time and money to create, develop, advertise, market, and sell its products under its Water Filter Mark.

46.     BHRS has naturally and systematically expanded both the geographic footprint for the distribution of its goods, and the breadth of its product line bearing the Water Filter Mark since 2017.

47.     BHRS has expended a substantial amount of money and effort in advertising and promoting its Water Filter Mark.

48.     As a result of BHRS's long-standing and continuous use of the Water Filter Mark and its success in selling, advertising, and promoting products bearing the mark, the mark has become strong and well known, has acquired distinctiveness and secondary meaning, and consumers have come to know, rely upon, and recognize the mark as identifying quality products emanating from BHRS.

49.     The Water Filter Mark is one of the most publicly recognizable brands of AVALON®, and therefore of BHRS, in the minds of consumers – so much so in fact that consumers primarily know BHRS through its Water Filter Mark. As a result of BHRS's substantial promotional, advertising, publicity, and public relations activities since 2017, the Water Filter Mark has acquired substantial goodwill and is an extremely valuable commercial asset.

III.    **The Distinctive Water Filter Mark Has Acquired Secondary Meaning**

50.     BHRS's unique and distinctive Water Filter Mark has come to be recognized and relied upon by the public as indicating water filters and coolers originating exclusively with BHRS.

(While the AVALON Mark is inherently distinctive, all facts supporting distinctiveness in this section apply to the AVALON Mark as well.)

51.      *First*, BHRS has been selling Avalon Coolers and Filters bearing the Water Filter Mark substantially exclusively and continuously in the United States since at least as early as December 11, 2017.

52.      Since that time, the Water Filter Mark has been used, advertised, and promoted by BHRS in connection with Avalon Coolers and Filters, including at its website at avalonh2o.com.

53.      BHRS's Avalon Coolers and Filters bearing the Water Filter Mark that have been sold, advertised, and promoted by BHRS have become increasingly popular throughout the United States.

54.      *Second*, BHRS has extensively used, advertised, and promoted the Water Filter Mark in connection with its business and goods to ensure that consumers recognize the Water Filter Mark as identifying of source.

55.      BHRS has spent over $11 million in advertising and marketing since 2017, with advertising expenditures steadily growing each year: 2017, $1 million; 2018, $1.1 million; 2019, $1.2 million; 2020, $1.45 million, 2021, $1.5 million, 2022, $1.8 million; 2023, $1.85 million; 2024, $2.2 million.

56.      BHRS advertises both online and at trade shows.

57.      Indeed, BHRS's advertising has caused consumers to associate the Water Filter Mark with BHRS as an indicator of source.

58.      BHRS's advertising campaign for its Avalon Coolers and Filters includes advertising that prominently touts the distinctive design of the Water Filter Mark as an indicator of source.

59. *Third*, as a result of BHRS's substantial advertising efforts, consumers have come to recognize the Water Filter Mark as identifying a source of great commercial success for BHRS.

60. BHRS has made over $68 million in sales of goods bearing the Water Filter Mark since 2017, with sales steadily growing each year.

61. Through Amazon alone, $3.2 million in advertising yielded $20 million in sales between 2017 and 2024.

## IV.   The Distinctive Water Filter Mark Is Non-Functional

62. BHRS's Water Filter Mark is nonfunctional, and therefore entitled to trade dress protection, for numerous reasons.

63. *First*, BHRS's product advertising demonstrates the absence of functionality of the Water Filter Mark, as the advertising does not tout any utilitarian advantage of the configuration of the Water Filter Mark compared to any other design configuration for a water cooler and filter available to competitors.

64. BHRS's advertising prominently touts the distinctive design of the Water Filter Mark as an indicator of source.

65. *Second*, there are countless alternative designs currently available in the marketplace for the configuration of a water cooler and filter, evidencing that BHRS's Water Filter Mark is not functional, because it is not the best design nor one of a few superior designs available to competitors.

66. There are numerous examples of configurations for a water filter available to competitors on the market, none of which resemble or replicate the overall configuration of BHRS's Water Filter Mark, all of which work as equally as well as the design of the Water Filter Mark, such that competitors do not need to use the design of the Water Filter Mark to compete effectively.

67.    For example, for a water filter, the cannister and filter end of a water filter may be smooth, tapered, flared, or of any other shape/silhouette, and display various patterns other than knurling design. None of these examples show the same overall configuration of BHRS's Water Filter Mark. Because the filtering elements of a water filter are typically contained inside the cannister, the exterior appearance of the device has no bearing on the filtration functionality of the filter.

68.    Thus, neither the overall appearance of BHRS's Water Filter Mark nor the configuration of its individual external components are competitively necessary for others in the marketplace.

69.    *Third*, BHRS's Water Filter Mark is nonfunctional because it would be neither less difficult nor less expensive to manufacture the design than the designs used by competitors in the industry. BHRS's water filters using the Water Filter Mark are not simpler or cheaper to manufacture compared to other designs.

70.    Thus, for these reasons, BHRS's Water Filter Mark is nonfunctional.

## V.    Defendants Operate a Coordinated Business Engaged in Unlawful Conduct that Violates BHRS's Intellectual Property Rights

71.    Defendants have copied BHRS's patented and trade dress-protected water filters in order to sell knockoff after-market replacement water filters for BHRS's Avalon Coolers.

72.    On information and belief, Defendants, individually and collectively acting in concert with one another and cooperatively, operate a coordinated business engaged in the manufacture, importation, marketing, and sale of aftermarket replacement water filters that infringe BHRS's intellectual property rights. Defendants sell these products under the "Riverpure" brand through online marketplaces, including Amazon.

73.    On information and belief, Mr. Oestreicher directs and controls the operations of

EZ Inventions and Brilliant Initiatives, which act in concert to market and sell these Accused Products. On information and belief, Defendants use overlapping business infrastructure, including shared contact information, email domains, and addresses, to conduct their operations.

74. EZ Inventions, and on information and belief, Mr. Oestreicher and Brilliant Initiatives, market, offer for sale, and sell, after-market replacement water filters for BHRS Avalon Coolers through an Amazon storefront called "Filter 123" under the brand "Riverpure."

75. EZ Inventions, and on information and belief, Mr. Oestreicher and Brilliant Initiatives, use the Filter 123 storefront to sell the Accused Products to customers throughout the United States, including in this district.

76. The Amazon seller page for the Accused Products sold at the Filter 123 storefront identifies the seller as EZ Inventions LLC. In response to an APEX (Amazon Patent Evaluation Express) proceeding initiated by BHRS on Amazon to enforce its patent rights against an infringing product sold by EZ Inventions at its Filter 123 store, BHRS received a response on Amazon from the seller containing "Seller contact details" as shown below. In that response, the seller identified itself as Shimon Oestreicher and provided contact information including the email address account@brilliantinitiatives.com and a mailing address of 24A Trolley Square, Suite 1131, Wilmington, Delaware 19806, the same private mail box address for EZ Inventions. On information and belief, the email address is associated with Brilliant Initiatives LLC.



77. At the same time Mr. Oestreicher sent a response to BHRS via Amazon, Mr. Oestreicher also sent an email to BHRS from the address info@riverpure.net, "writing on behalf of EZ Inventions LLC" and demanding an immediate retraction of the APEX complaint. That

15

email was signed "Shimon Oestreicher, EZ Inventions LLC." Mr. Oestreicher copied mmiller@lernerdavid.com, an email address associated with attorney Matthew Miller at the law firm of Lerner David LLP, who is, on information and belief, by virtue of being copied, counsel to Mr. Oestreicher's and EZ Inventions.

78.     Public records further identify Mr. Miller and Lerner David LLP as counsel to Brilliant Initiatives LLC in *Research Products Corporation v. Brilliant Initiatives LLC*, No. 1:24-cv-01436, filed on November 25, 2024, in U.S. District Court for the Northern District of New York. In the complaint, like here, Brilliant Initiatives is accused of patent infringement for selling replacement air filters under the brand "Riverline." On information and belief, all of these connections support the inference that the email address of account@brilliantinitiatives.com is associated with Brilliant Initiatives LLC and that EZ Inventions LLC, Brilliant Initiatives LLC, and Mr. Oestreicher are related participants who, collectively acting in concert with one another and cooperatively, operate a coordinated business engaged in the conduct alleged herein.

79.     Furthermore, according to U.S. Patent and Trademark Office Records, EZ Inventions owns a trademark registration for the RIVERPURE mark (Reg. No. 7735894) under which the Accused Products are marketed and sold. The registration for the RIVERPURE mark covers the goods of "Air filters for HVAC units; Water filters." Brilliant Initiatives also owns a trademark registration for the RIVERLINE mark (Reg. No. 7428542) covering the identical goods. Both trademark applications were prosecuted by the same law firm, Dunner Law PLLC. On information and belief, the overlap in trademarks, product categories, and trademark counsel further reflects the coordinated nature of Defendants' commercial activities.

80.     On information and belief, these facts support the inference that Defendants, individually and collectively acting in concert with one another and cooperatively, operate a

coordinated business engaged in the marketing and sale of the Accused Products.

81.     Further, these facts support the inference that Mr. Oestreicher is, on information and belief, owner, operator, and/or principal of both EZ Inventions and Brilliant Initiatives.

82.     On information and belief, Mr. Oestreicher is the individual responsible for operating the Amazon storefront and directing the sale of the Accused Products through EZ Inventions.

83.     On information and belief, Brilliant Initiatives participates in and facilitates the marketing, distribution, and sale of the Accused Products, including through the use of the email domain brilliantinitiatives.com.

84.     On information and belief, EZ Inventions, Brilliant Initiatives, and Mr. Oestreicher, collectively acting in concert with one another and cooperatively, are jointly responsible for the manufacture, importation, marketing, offer for sale, and sale of the Accused Products. Upon information and belief, Defendants' overlapping roles, shared infrastructure, and coordinated communications reflect a unified, coordinated commercial operation rather than separate and independent actors.

## VI.     Defendants' Unlawful Conduct Violating BHRS's Patent and Trademark Rights

85.     Defendants sell at least two infringing filters, including Model No. RIVERPURE-AV with an Amazon ASIN number of B0D1K6CY9Q (the "Old Accused Product"),[1] and Model No. RIVERPURE-1500 with an Amazon ASIN number of B0FQ4GYPZZ[2] (the "New Accused Product") (collectively, "Accused Products").

---

[1] The model and ASIN numbers were identified by accessing Defendants' Filter 123 store on March 26, 2026, at the following URL https://www.amazon.com/dp/B0D1K6CY9Q.

[2] The model and ASIN numbers were identified by accessing Defendants' Filter 123 store on March 26, 2026, at the following URL https://www.amazon.com/dp/B0FQ4GYPZZ.

86.     Images of the Old Accused Product bearing Model No. RIVERPURE-AV are shown below.



| Front of Old Accused Product (Model No. RIVERPURE-AV) | Rear of Old Accused Product (Model No. RIVERPURE-AV) |

87.     Images of the Accused Product bearing Model No. RIVERPURE-1500 are shown below.




| Front of New Accused Product (Model No. RIVERPURE-1500) | Rear of New Accused Product (Model No. RIVERPURE-1500) |
|---|---|

88. The New Accused Product infringes at least claim 1 of the '667 Patent as discussed below.

89. Defendants' infringement of the '667 Patent by the New Accused Product is willful. On May 22, 2025, BHRS informed EZ Inventions via Amazon that the Old Accused Product infringed the '667 Patent. On June 18, 2025, Mr. Oestreicher, writing on behalf of EZ Inventions, responded in writing that the Old Accused Product does not infringe, stating: "The central novelty of the patent is a unique interlocking 'teeth mechanism' specifically identified in the patent claims as elements 84, 86 (upper teeth) and 88, 90 (lower teeth). Our RIVERPURE filter head contains none of these structural features. The absence of these claim-critical elements proves non-infringement." *See* **Exhibit B.**

90. On information and belief, Defendants debuted the New Accused Product—an

updated version of the Old Accused Product—sometime in early 2026. As shown in the side-by-side images below, the New Accused Product now contains the very "teeth mechanism" that Defendants admitted was the key point of novelty in the '667 Patent.




| Old Accused Product | New Accused Product |

91.    Defendants' addition of this teeth mechanism was necessary to overcome compatibility issues raised by the Old Accused Product—the version without teeth. As discussed below, the Old Accused Product, when installed into Avalon Coolers, simply does not filter any water, and in fact, obstructs the flow of water.

92.    On information and belief, aware of the '667 Patent, Defendants purposely changed their filter design to include teeth to overcome compatibility issues and in doing so, willfully infringed the '667 Patent.

93.    In March 2026, after becoming aware of the New Accused Product, BHRS opened an APEX (Amazon Patent Evaluation Express) proceeding with Amazon against EZ Inventions to enforce its patent rights, before bringing the instant action.

94.    The Accused Products also copy BHRS's Water Filter Mark, including the

distinctive blue and black color combination used by BHRS for its replacement filters (carbon and sediment) – features that have become synonymous with BHRS and Avalon as a result of continuous and substantially exclusive use by BHRS since 2017.

95.     Defendants' actions have caused a likelihood of confusion.

96.     Defendants' Accused Products incorporating the Water Filter Mark are competitive with and overlapping with BHRS's Avalon Filters bearing the Water Filter Mark and Avalon Filters sold as an integral part of Avalon Coolers bearing the Water Filter Mark.

97.     Defendants promote and sell the Accused Products in online stores over the internet, including on the same Amazon platform, where BHRS's filters and Defendants' filters are typically displayed side by side. The purchasers for BHRS's Avalon Coolers and Filters bearing the Water Filter Mark are closely related to and overlapping with, if not identical to, the purchasers for Defendants' Accused Products.

98.     Indeed, Defendants market the Accused Products as aftermarket replacement filters for BHRS's Avalon Coolers, thus targeting BHRS's customers. The continued use by Defendants of BHRS's Water Filter Mark in their advertising and promotional materials and on their products is likely to diminish the goodwill associated with the marks.

99.     Despite the Accused Products being nearly identical copies of BHRS's Avalon Filter, on information and belief the Accused Products are inferior in quality to the Avalon Filters and lack National Sanitation Foundation (NSF) certification for meeting critical water filter safety standards, *as will be discussed below*.

100.    On information and belief, Defendants are deriving and will continue to derive substantial revenue from their Accused Products and marketing materials bearing the Water Filter Mark.

101.    Allowing the unlawful conduct of Defendants to continue will do serious damage to BHRS's core business, including the possibility of putting BHRS and its 15 employees out of business altogether.

102.    BHRS's Avalon Filters are a key part of BHRS's business, and BHRS's entire line of bottleless Avalon Coolers today use the Avalon Filters. Indeed, BHRS expects to experience a sharp drop in sales and suffer from price erosion, as Defendants' Accused Product retails for 40% less than BHRS's water filter.

103.    Furthermore, allowing Defendants, a copycat infringer, to continue sale of knockoff water filters will damage BHRS's Avalon brand and create a loss of goodwill with customers. Customers who unwittingly purchase the Accused Products will be dissatisfied with the taste and quality of water coming from these inferior quality filters and associate the poor filters and water quality with Avalon Coolers, causing some to lodge complaints or return the coolers, causing damage to the Avalon brand. Finally, allowing one copycat to continue selling will unleash a Pandora's box of countless additional copycats from overseas, a risk which other companies in the water filtration industry already face.

104.    Defendants' unauthorized use of the Water Filter Mark is likely to cause confusion or mistake or to deceive consumers into believing that Defendants' Accused Products are sponsored, licensed, or authorized by, or are affiliated, connected with or otherwise associated with BHRS, or that BHRS's products offered under BHRS's Water Filter Mark are sponsored, licensed or authorized by, or affiliated, connected, or otherwise associated with BHRS when they are not.

105.    Defendants' continued manufacture, use, advertising, sale, offer for sale, or importation of the New Accused Products that infringe the '667 Patent and the Water Filter Mark

22

is, on information and belief, with full knowledge of the prior ownership by BHRS of BHRS's '667 Patent and Water Filter Mark and BHRS's ownership of and right to use and control the use of such marks.

106.    Defendants have acted and continue to act without regard to BHRS's intellectual property rights and goodwill.

107.    As a result of Defendants' unauthorized manufacture, use, advertising, sale, offer for sale, or importation of the Accused Products that infringe the '667 Patent and Water Filter Mark, Defendants are being unjustly enriched at BHRS's expense, and BHRS is being damaged. Defendants' conduct unlawfully capitalizes on the goodwill and reputation established by BHRS through its use and promotion of its Water Filter Mark dating back to the mark's first use date.

108.    Defendants' unauthorized manufacture, use, advertising, sale, offer for sale, or importation of the Accused Products that infringe the '667 Patent and Water Filter Mark has significantly injured BHRS's interests. Specifically, Defendants (a) have traded upon and threaten to further trade upon the significant and valuable goodwill in BHRS's Water Filter Mark; (b) are likely to cause public confusion as to the source, sponsorship, or affiliation of Defendants' products; (c) have damaged and threaten to further damage BHRS's significant and valuable goodwill in BHRS's Water Filter Mark; (d) have injured and threaten to further injure BHRS's right to use BHRS's Water Filter Mark as the exclusive indication of origin of BHRS's water filters and water filters sold as an integral part of water coolers in New York and throughout the United States; (e) have lessened the capacity of BHRS's Water Filter Mark to indicate that its products are sponsored by BHRS; and (f) have engaged in unlawful, unfair, and fraudulent business practices from which members of the public are likely to be deceived as to the source, sponsorship, or endorsement of Defendants' goods.

23

109.    Unless these infringing acts by Defendants are restrained by this Court, they will cause irreparable injury to BHRS and to the public, for which there is no adequate remedy at law.

**VII.    Defendants' Unlawful Conduct Regarding False Claims of Compatibility**

110.    Defendants are further damaging BHRS's water cooler business by falsely advertising, or creating the false impression, that the Accused Products are compatible with BHRS's Avalon Coolers, when they actually are not, causing damage.

111.    Defendants' claims of compatibility are false because the Accused Products are compatible only with older models of BHRS's Avalon Coolers and not with newer models.

112.    The lack of compatibility of the Accused Products with newer Avalon Cooler models has caused damage to the newer coolers, resulting in harm to BHRS's reputation and revenue since BHRS's customers have complained about failure of their Avalon Coolers and BHRS has had to replace some of these damaged coolers for customers.

113.    Defendants advertise on Amazon that the Accused Products are compatible with BHRS's Avalon Coolers.[3]

---

[3] As displayed in the URLs identified in Footnotes 1 and 2, herein.





114.    These claims are clearly false and have misled numerous consumers. For example,

the Amazon product page for the RIVERPURE-AV model (available in the URL at Note 1) warns

that "compatibility is a significant issue, with customers reporting it doesn't work with all Avalon

water dispensers."

25

## Customers say

Customers find the water filter easy to install and appreciate its great taste. The filtration quality and value for money receive positive feedback. However, compatibility is a significant issue, with customers reporting it doesn't work with all Avalon water dispensers. Moreover, functionality, fit, and water flow show mixed results - while some say it works great and fits perfectly, others report it doesn't work at all and isn't compatible with Avalon dispensers.

ai Generated from the text of customer reviews

**Select to learn more**

↗ Filtration (15)  ↗ Water taste (8)  ↗ Installation (7)  ∼ Functionality (28)

∼ Value for money (18)  ∼ Fit (16)  ∼ Water flow (16)  ↘ Compatibility (16)

115.    The reviews from Defendants' seller page for this model illustrate the compatibility

issue vividly.

 Scott Hansen

★☆☆☆☆ **Will not fit an Avalon A5 at all!**
Reviewed in the United States on February 21, 2025
**Verified Purchase**

For all the people on here that say these filters work in the A5 bottleless dispenser, you are full of it! I purchased these filters along with a brand new Avalon A5 bottleless filter to save money. These filters did not work at all. You could not get water through them. So everyone with a 4 or 5 star is misleading everyone.

It took 2 months, with me contacting Avalon customer service, them helping me test the unit, and them sending me a second unit to figure out it was these filters that were incompatible. Not the unit. I figured it out when the second unit did the same exact thing. I then decided to purchased the right filters from Avalon that are labeled inside the cabinet.

Low and behold as soon as I plugged in their filters as indicated on the cabinet, the system immediately filled, and is now heating and cooling the water.

The top end of these filters have the same overall shape as the ones from Avalon, but are missing appropriate channels and shapes the top of the Avalon filters have, and are needed for it to work. So don't listen to the people who say these work on an Avalon A5, because they are a waste of money and time. Now I have to waste my time returning these unusable filters.

In the picture the filter on the left is this filter. The filter on the right is the Avalon filter. Significant difference above the top O-ring, and above the second O-rign.



 Christina

★☆☆☆☆ **Warning did not work with the b8blk**
Reviewed in the United States on March 2, 2026
**Verified Purchase**

Warning these are not compatible with the B8BLK Countertop Avalon. I purchased these because they said they were and of course the price is 40.00 cheaper than the Avalon named ones so we installed them and water would not go through them. I checked all connections and water went through everything except the filters. So im out about $55 and have just ordered the $100 ones from Avalon

★☆☆☆☆ **Not compatible**
Reviewed in the United States on March 31, 2026
**Verified Purchase**

Will not fit properly work on the Avalon A8 bottle less water dispenser. I purchased the filters around the same time I purchased the water dispenser and just recently had to change out the filter. Went to install and realized the connectors did not match up where the tip is. It is a slight difference but will not connect the water flow valve. They marketed this as being compatible. Would not suggest buying. I'm outside of the return window.





**Joe Langton**

★☆☆☆☆  **Not compatable with Avalon water dispenser!**

Reviewed in the United States on September 10, 2025

**Verified Purchase**

These filters do NOT work with my Avalon H2o water dispenser! I ordered them in January when I ordered the dispenser. It came with genuine filters. I just now need to replace them and the snap in but will not fill up with water. I have tried all of the trouble shooting and had to put the old filters back on, which work. The top of the filters are different. There is not option to contact the seller or return the item since they were ordered in January. Very frustrating and NOT happy!!



**Lauren**

★☆☆☆☆  **Unusable**

Reviewed in the United States on January 3, 2026

**Verified Purchase**

The new filter would not allow water to pass through it, so I had to buy the name brand and throw these away. Would not recommend purchasing these.



**sam**

★★★☆☆  **replacement compapible???**

Reviewed in the United States on October 31, 2025

**Verified Purchase**

The unit does not accept them as the correct replacement. After replacing them several times the unit continues to blinl after doing the switch control 3 x off and on and drain each filter fpr 2 minuted. the unit stil continues to blink requieing replacement.

Helpful    |   Report

**credocreed**

★★★☆☆  **Not Compatible with Avalon Dispensers**

Reviewed in the United States on April 15, 2025

**Verified Purchase**

Does not work with Avalon water dispenser. I bought them with my Avalon dispenser and it wouldn't flow any water. I thought it was something wrong with the dispenser itself. So I returned it and bought another one same model. New one still didn't work. So I bought original Avalon filters and wala! Everything works! Customers should be warned that these filters are not compatible with Avalon water dispensers.

One person found this helpful

Helpful    |   Report

**T Blount**

★☆☆☆☆  **The filter don't fit the Avalon water cooler**

Reviewed in the United States on January 22, 2026

**Verified Purchase**

This filter does not work with the Avalon water cooler. It is false advertising. I bought these filters when I purchase my Avalon water cooler to have them on hand when I needed a replacement. Now when I needed to install them they didn't fit and it was to late to return them. This was a costly mistake.

One person found this helpful

116.    These false claims of compatibility have wrongfully diverted sales of BHRS's replacement filters to Defendants and have thus reduced BHRS's market share for these replacement filters.

117.    Further, the actual lack of compatibility of the Accused Products with BHRS's newer Avalon Cooler models has caused damage to these coolers.

118.    BHRS has received numerous daily complaints from customers that their Avalon Coolers have become damaged after installing the Accused Products.

119.    Based on extensive communications with BHRS's customers and BHRS's own internal investigation, BHRS discovered that, when placed in BHRS's coolers, the Accused Filters

27

simply do not filter any water, and in fact, obstruct the flow of water.

120. This obstruction is causing BHRS's Avalon Coolers to break, since the pumping mechanism continues to pump water despite there being no flow. This obstruction has caused the pump to malfunction, forcing BHRS to send many replacement Avalon Coolers to its customers, costing BHRS thousands of dollars in replacement machines.

121. The physical damage to BHRS's Avalon Coolers caused by the Accused Products has immeasurably caused a loss of goodwill and harmed BHRS's brand and its standing with these customers, who believe that BHRS's Avalon Coolers are of poor quality and construction, even though the true cause of the malfunctions is the Accused Products – which were falsely advertised to BHRS's customers as being compatible with Avalon Coolers.

122. As a result, BHRS has experienced falling sales of its Avalon Coolers, both because of the bad reputation caused by the Accused Products and because BHRS's team has had to divert resources away from selling its products to address the numerous complaints coming from its customers.

123. In short, the Accused Products have cost BHRS money, and caused harm to its brand, loss of goodwill, and customer confusion as demonstrated on the Amazon customer review pages of Defendants' Accused Products.

## VIII.   **Defendants' Unlawful Conduct Regarding False Claims of Safety Compliance**

124. Defendants are also falsely claiming that their Model No. RIVERPURE-AV is "Certified to Meet NSF/ANSI Standards 42 and 378" and that "External Testing Certification" for this statement was conducted by the "WQA," or Water Quality Association.

125. "NSF" is the acronym for the National Sanitation Foundation, which is an independent, non-profit organization that develops standards and certifies water filters for safety and performance.

28

126.    "ANSI" is the acronym for the American National Standards Institute, which is a private, non-profit organization that accredits the organizations that develop standards and test water filters for safety, structural integrity, and contaminant reduction. ANSI ensures these standards are fair, objective, and meet national requirements, making "NSF/ANSI" certification a trusted benchmark for performance.

127.    Prior to commencing this action, BHRS thoroughly searched the databases maintained by NSF, WQA ,and IAPMO of water filters certified by those organizations and has found that the RIVERPURE-AV model is not certified by NSF, WQA, or IAPMO.

128.    Further, there is no such "NSF 378" standard, and any seller in the filter industry would know this, meaning that Defendants' claims of compliance with this standard are completely made up.

129.    The false claims pose potentially severe health risks to consumers because the Accused Products have not, in fact, been certified by NSF or ANSI.

130.    Defendants' false safety certification claims cause harm to BHRS. Because Defendants simultaneously market their filters as both ANSI/NSF-certified and compatible with BHRS's coolers, a consumer who purchases Defendants' filter and becomes ill is likely to attribute the illness to BHRS's cooler rather than Defendants' filter. Defendants' false certification claims thus not only cause direct consumer harm but also misdirect blame onto BHRS, damaging BHRS's reputation and goodwill.

131.    Numerous studies warn about the dangers of counterfeit, knockoff, and non-OEM after-market replacement filters, just like the Accused Products. These filters "make deceptive or faulty claims about fit and performance, but they lack the technologies and components for proper water filtration and appliance functionality. These filters may not fit properly, causing leaks and

even introducing pollutants into the water your family drinks. More importantly, these false filters make performance claims about removing impurities from water when in fact, they fail to do so." *See* **Exhibit C**. All of these are precisely the types of false claims Defendants make about the Accused Products.

132.    Consequently, BHRS is entitled to an immediate injunction requiring Defendants to remove such claims of compliance with ANSI and NSF to protect both the public and BHRS.

## IX.    Defendants' Other False Statements

133.    Defendants' Amazon product page for the New Accused Filter (ASIN B0FQ4GYPZZ) also claims that its filters are "Built with patented technology" with no information as to what this is referring to. Defendants do not own any patents and the New Accused Filter is not patented. This is another false statement to customers.

- **Reliable Quality:** Built with patented technology for consistent filtration and peace of mind.

134.    Defendants' Amazon product page for the New Accused Filter (ASIN B0FQ4GYPZZ) also claims that the filter "Removes lead." Even if it were certified, it could only be certified to "reduce lead," as no certification will state that a filter can remove lead completely. "Removes lead" is a false statement to customers.



## COUNT I
### (Infringement of the '667 Patent Under 35 U.S.C. § 271)
### (All Defendants)

135. BHRS incorporates and realleges Paragraphs 1-134 as if fully set forth herein.

136. Defendants manufacture, use, sell, offer for sale, or import the New Accused Products for sale in the United States, and these acts directly and/or indirectly infringe one or more claims of the '667 Patent literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a), (b), and/or (c).

137. The New Accused Products infringe directly and/or indirectly one or more claims of the '667 Patent literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a), (b), and/or (c).

138. Defendants' manufacture, use, sale, offer for sale, or importation, of the New Accused Products in the United States constitutes infringement of one or more claims of the '667 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

139. The manufacture, use, sale, offer for sale, or importation of the New Accused Products is covered by the claims of the '667 Patent, and one or more of Defendants' actions constitutes direct infringement of the '667 Patent.

140. The manufacture, use, sale, offer for sale, or importation of the New Accused Products is covered by the claims of the '667 Patent, and one or more of Defendants' actions are inducing infringement of the '667 Patent.

141. The manufacture, use, sale, offer for sale, or importation of the New Accused Products is covered by the claims of the '667 Patent, and one or more of Defendants' actions are contributing to the infringement of the '667 Patent.

142. The '667 Patent has 21 claims directed to a filter for a water cooler.

143.   As one example, independent claim 1 of the '667 Patent is directed to:

A filter for a water cooler comprising a housing with a cavity and cavity ports, said filter comprising:

an end and an axis, said filter end comprising:

a cylindrical base having a base surface at least a portion of which extends in a plane perpendicular to said filter axis; and

a filter neck extending from said base surface, said neck having filter ports and a side surface,

said neck having a bottom section, a lower top section extending upward from the bottom section, an upper top section extending upward from the lower top section and dimensionally smaller than the lower top section, and a plurality of filter ports,

said bottom section having a side surface,

said upper top section having a first planar top surface,

said lower top section having a second planar top surface,

said upper top section comprising a planar step extending upward from the first planar surface and wherein the planar step forms first and second teeth extending outward from a center of the upper top section,

said first and second teeth comprising a first and second edge, wherein said first and second edges are parallel to each other and offset from the center of the upper top section,

said side surface of said neck comprising an elongated protrusion extending in a direction parallel to said axis,

said base surface comprising an inclined surface portion having one or more protrusions extending from said inclined surface portion,

said filter end being configured to be received in the housing in bayonet-type fashion to align said filter ports and the cavity ports.

144.   Consistent with this claim, and based on publicly available information, and on information and belief, the manufacture, use, sale, offer for sale, or importation of the New Accused Products meet each and every limitation of claim 1 of the '667 Patent literally or equivalently, and Defendant directly and/or indirectly infringes that claim under 35 U.S.C. § 271(a), (b), and/or (c).

145.   Defendants directly infringe the claims of the '667 Patent because each element of the claims thereof is found in the New Accused Products.

146.   Defendants indirectly infringe the '667 Patent by actively, knowingly and

32

intentionally aiding, abetting, directing, encouraging, or otherwise instructing third parties and knowingly inducing third parties, including contract manufacturers, to commit acts that constitute infringement of the '667 Patent.

147.    The preamble of claim 1 is not limiting. Nonetheless, the New Accused Products are filters for water coolers, which include a housing having a cavity and cavity ports.

148.    Images of the New Accused Products and the structures that infringe claim 1 of the '667 Patent are shown below.



149.    The New Accused Products have ends and an axis.

150.    The New Accused Products have a cylindrical base having a base surface at least a portion of which extends in a plane perpendicular to said filter axis.

151.    The New Accused Products have a filter neck (portion that includes the bayonet style extension) extending from said base surface, said neck having filter ports and a side surface.

152.    The New Accused Products' neck has a bottom section (portion with bayonet style extensions), a lower top section extending upward from the bottom section (above lower O-ring), an upper top section extending upward from the lower top section (above upper O-ring), which is

33

dimensionally smaller than the lower top section. The plurality of filter ports are located on the top sections.

153.    The bottom section has a side surface. The upper top section has a planar top surface. The lower top section also has a planar top surface.

154.    The upper top section has a planar step extending upward (narrow rectangular sections at the very top rising from the top section) from the first planar surface. The planar step forms first and second teeth extending outward from a center of the upper top section (two rectangular sections extending outward). This element is what Defendants willfully and purposefully added to try to overcome compatibility issues of the Old Accused Filter.

155.    The first and second teeth have two edges. The two edges are parallel to each other and offset from the center of the upper top section.

156.    The Accused Products include base surface that has an inclined surface portion (the portion between the neck and the knurled portion), which has one or more protrusions extending from said inclined surface portion (the stepped up ridge on the inclined surface).

157.    The Accused Product is inserted into the interface (housing for the Accused Product/Avalon Filter, which is disposed on the Avalon Cooler) and then turned clockwise into place (bayonet-type fashion).

158.    Defendants have no reasonable basis for believing that the Accused Product will not infringe one or more valid claims of the '667 Patent and no reasonable basis for believing that the infringed claims are invalid.

159.    Defendants' manufacture, use, sale, offer for sale, or importation of the Accused Product constitutes willful infringement.

160.    This case is "exceptional," and BHRS is entitled to an award of reasonable

attorneys' fees under 35 U.S.C. § 285.

161.    The acts of infringement by Defendants set forth above will cause BHRS irreparable harm for which it has no adequate remedy at law, and those acts will continue unless enjoined by this Court.

162.    BHRS is entitled to an injunction prohibiting Defendants from manufacturing, using, offering for sale, selling, or importing the Accused Products in the United States before expiration of the '667 Patent.

## COUNT II
**(Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a))**
**(All Defendants)**

163.    BHRS incorporates and realleges Paragraphs 1-134 as if fully set forth herein.

164.    BHRS is the owner of common law rights in the Water Filter Mark.

165.    BHRS has extensively marketed and sold in the United States water cooler products bearing the Water Filter Mark since December 11, 2017.

166.    BHRS's Water Filter Mark has acquired distinctiveness and secondary meaning long prior to the date when Defendant first used BHRS's Water Filter Mark.

167.    Since at least as early as 2023, Defendants have sold, offered for sale, distributed, or advertised the Accused Products that bear BHRS's Water Filter Mark.

168.    Defendants' Accused Products that bear BHRS's Water Filter Mark compete directly with BHRS's water cooler products that bear BHRS's Water Filter Mark in that the two sets of products are marketed to the same consumers and are sold through the same channels of distribution, including but not limited to Amazon.com.

169.    Defendants have not obtained any permission, license, or authorization from BHRS to market or sell the Accused Products that bear contain BHRS's Water Filter Mark.

35

170.    Defendants' acts as complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval and therefore constitute unfair competition and false designation of origin in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

171.    By reason of Defendants' bad faith and willful infringement and otherwise egregious nature of Defendants' actions, this is an exceptional case, and BHRS has sustained and is entitled to recover actual and treble damages, attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III
**(Trade Dress Infringement Under New York Common Law)**
**(All Defendants)**

172.    BHRS incorporates and realleges Paragraphs 1-134 as if fully set forth herein.

173.    Defendants' acts as complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval and therefore constitutes trade dress infringement and unfair competition in violation of New York common law.

174.    As a direct and proximate result of Defendants' acts complained of herein, BHRS has and will continue to suffer great harm. BHRS will continue to be irreparably harmed unless Defendants are enjoined from further acts against BHRS.

175.    BHRS has sustained and is entitled to recover actual and treble damages, attorneys' fees, and the costs of this litigation.

## COUNT IV
**(Unfair Competition Under New York Common Law)**
**(All Defendants)**

176.    BHRS incorporates and realleges Paragraphs 1-134 as if fully set forth herein.

177.    Defendants' acts as complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval and therefore constitute trade dress infringement

and unfair competition in violation of New York common law.

178.    As a direct and proximate result of Defendants' acts complained of herein, BHRS has and will continue to suffer great harm. BHRS will continue to be irreparably harmed unless Defendants are enjoined from further acts against BHRS.

179.    By reason of Defendants' bad faith and willful and knowing conduct and otherwise egregious nature of Defendants' actions, BHRS has sustained and is entitled to recover actual and treble damages, attorneys' fees, and the costs of this litigation.

<u>**COUNT V**</u>
**(False Advertising Under 15 U.S.C. § 1125(a): False Claims of Compatibility)**
**(All Defendants)**

180.    BHRS incorporates and realleges Paragraph 1-134 as if fully set forth herein.

181.    Defendants' acts as complained of herein constitute a false or misleading description of fact, or false or misleading representation of fact, in commercial advertising or promotion, that misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, and therefore constitutes false advertising in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

182.    Defendants made a false statement of fact in a commercial advertisement about their own or another's product, because they made false statements that the Accused Products were compatible with BHRS's Avalon Water Coolers. These statements were false because the Accused Products are not compatible with BHRS's coolers.

183.    Defendants' statements actually deceived or have the tendency to deceive a substantial segment of its audience, because Defendants' statements induced unsuspecting customers to purchase the Accused Products to replace filters in BHRS's coolers, as evidenced by the numerous reviews on Defendants' customer review pages in which customers represented that

37

they purchased Defendants' filters for use in BHRS's coolers.

184.    The deception is material, in that it is likely to influence the customers' purchasing decision, because Defendants' statements about the compatibility were the primary basis for many customers' reasons for purchasing the Accused Products.

185.    Defendants caused their false statement to enter interstate commerce, because the statement was published on its Amazon store page, which is made available to customers throughout the United States.

186.    BHRS has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to Defendants or by a loss of the goodwill associated with its products. BHRS has been harmed because the lack of compatibility of the Accused Products with BHRS's Avalon Coolers has caused damage to BHRS's coolers, resulting in monetary damages and harm to BHRS's reputation since customers have mistakenly assumed that the water coolers are defective when it is the lack of compatibility of the Accused Products that have caused damage to BHRS's coolers. The false statements of compatibility made by Defendants set forth above have harmed BHRS by diverting sales of replacement filters to which BHRS was entitled to make.

187.    The false statements of compatibility made by Defendants set forth above have also harmed BHRS by tarnishing its reputation. BHRS has experienced falling sales of its Avalon Coolers, both because of the bad reputation caused by the Accused Products being used in BHRS's coolers and because BHRS's team has had to divert resources away from selling its products to address the numerous complaints coming from its customers.

188.    The false statements of compatibility made by Defendants set forth above have caused, and will continue to cause, BHRS irreparable harm for which it has no adequate remedy at law, and those acts will continue unless enjoined by this Court.

189.    BHRS is entitled to an injunction prohibiting Defendants from making any statements of compatibility with BHRS's coolers and ordering that Defendants take down any such false statements.

## COUNT VI
### (False Advertising Under 15 U.S.C. § 1125(a): False Claims of NSF/ANSI Certification)
### (All Defendants)

190.    BHRS incorporates and realleges Paragraphs 1-134 as if fully set forth herein.

191.    Defendants claim that their filter Model No. RIVERPURE-AV is "Certified to Meet NSF/ANSI Standards 42 and 378" and that "External Testing Certification" for this statement was conducted by the "WQA", or Water Quality Association.

192.    These statements are literally false because Defendants' filter Model No. RIVERPURE-AV has not, in fact, been "Certified to Meet NSF/ANSI Standards 42 and 378" and has not, in  fact, been subject to "External Testing Certification" by the WQA.

193.    Defendants' acts as complained of herein constitute a false or misleading description of fact, or false or misleading representation of fact, in commercial advertising or promotion, that misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, and therefore constitutes false advertising in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

194.    Defendants made these false statements of fact in a commercial advertisement about their own products.

195.    Defendants' statements actually deceived or have the tendency to deceive a substantial segment of its audience, because Defendants' statements have induced unsuspecting customers to purchase the Accused Products believing that they are safe due to the claims of NSF/ANSI certification.

196.    The deception is material, in that it is likely to influence the customers' purchasing decision, because Defendants' statements about the filters' safety profile were the primary basis for many customers' reasons for purchasing the Accused Products.

197.    Defendants caused their false statement to enter interstate commerce, because the statement was published on its Amazon store page, which is made available to customers throughout the United States.

198.    Defendants' false safety certification claims cause harm to BHRS. Because Defendants simultaneously market their filters as both ANSI/NSF-certified and compatible with BHRS's coolers, a consumer who purchases Defendants' filter and becomes ill is likely to attribute the illness to BHRS's cooler rather than Defendants' filter. Defendants' false certification claims thus not only cause direct consumer harm but also misdirect blame onto BHRS, damaging BHRS's reputation and goodwill.

199.    BHRS is entitled to an injunction prohibiting Defendants from making any statements of certification with NSF or ANSI standards.

### COUNT VII
### (False Advertising Under 15 U.S.C. § 1125(a): False Claims of Patent Protection)
### (All Defendants)

200.    BHRS incorporates and realleges Paragraphs 1-134 as if fully set forth herein.

201.    Defendants claim that their New Accused Filter is "Built with patented technology."

202.    These statements are literally false because Defendants do not own any patents and the New Accused Filter is not patented.

203.    Defendants' acts as complained of herein constitute a false or misleading description of fact, or false or misleading representation of fact, in commercial advertising or

40

promotion, that misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, and therefore constitutes false advertising in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

204. Defendants made these false statements of fact in a commercial advertisement about their own products.

205. Defendants' statements actually deceived or have the tendency to deceive a substantial segment of its audience, because Defendants' statements have induced unsuspecting customers to purchase the Accused Products believing that they are patent protected.

206. The deception is material, in that it is likely to influence the customers' purchasing decision, as consumers are likely to view a product protected by patents as having higher value in terms of utility and quality and innovation and create the perception of exclusivity.

207. Defendants caused its false statement to enter interstate commerce, because the statement was published on their Amazon store page, which is made available to customers throughout the United States.

208. Defendants' false statements of patent protection cause harm to BHRS by suggesting to customers that if they desired a filter with patented features, they must purchase a filter from Defendants to the detriment of BHRS.

209. BHRS has suffered actual damages and irreparable harm, including lost customers, business opportunities, customer confusion, loss of good will, reputational damage, and legal costs arising from Defendants' misleading representations.

210. BHRS is entitled to an injunction prohibiting Defendants from making any statements of patent protection for its filters.

**COUNT VIII**
**(False Advertising Under 15 U.S.C. § 1125(a): False Claims of Lead Removal)**

**(All Defendants)**

211.    BHRS incorporates and realleges Paragraphs 1-134 as if fully set forth herein.

212.    Defendants' Amazon product page for the New Accused Filter (ASIN B0FQ4GYPZZ) claims that the filter "Removes lead." Even if it were certified, it could only be certified to "reduce lead," as no certification will state that a filter can remove lead completely. "Removes lead" is a false statement to customers.

213.    Defendants claims that its New Accused Filter "removes lead."

214.    These statements are literally false because even if the New Accused Filter were certified, it could only be certified to "reduce lead," as no certification will state that a filter can remove lead completely.  "Removes lead" is a false statement to customers.

215.    Defendants' acts as complained of herein constitutes a false or misleading description of fact, or false or misleading representation of fact, in commercial advertising or promotion, that misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, and therefore constitutes false advertising in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

216.    Defendants made these false statements of fact in a commercial advertisement about their own products.

217.    Defendants' statements actually deceived or have the tendency to deceive a substantial segment of its audience, because Defendants' statements have induced unsuspecting customers to purchase the New Accused Filters believing that they completely remove all lead.

218.    The deception is material, in that it is likely to influence the customers' purchasing decision, as consumers are likely to view a product that completely removes all lead as being safer and having higher value than other filters on the market and a primary reason for purchasing the

New Accused Filter.

219.    Defendants caused their false statement to enter interstate commerce, because the statement was published on its Amazon store page, which is made available to customers throughout the United States.

220.    Defendants' false statements of patent protection cause harm to BHRS by suggesting to customers that if they desired a filter that completely removes lead, they must purchase a filter from Defendants to the detriment of BHRS.

221.    BHRS has suffered actual damages and irreparable harm, including lost customers, business opportunities, customer confusion, loss of good will, reputational damage, and legal costs arising from Defendants' misleading representations.

222.    BHRS is entitled to an injunction prohibiting Defendants from making any statements of about completely removing lead from its filters.

## **PRAYER FOR RELIEF**

WHEREFORE, BHRS respectfully requests the following relief:

A.    A declaration and entry of judgment that:

    a.    Defendants have infringed one or more claims of the '667 Patent;

    b.    Defendants have engaged in unfair competition and false designation of origin by use of the Water Filter Mark in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

    c.    Defendants have engaged in trade dress infringement in violation of the common law of the State of New York;

    d.    Defendants have engaged in unfair competition in violation of the common law of the State of New York;

    e.    Defendants have engaged in false advertising in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a) by making false claims of compatibility;

f.  Defendants have engaged in false advertising in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a) by making false claims of certification by NSF and ANSI;

g.  Defendants have engaged in false advertising in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a) by making false claims of patent protection; and

h.  Defendants have engaged in false advertising in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a) by making false claims of lead removal;

B.  An Order and judgment permanently enjoining Defendants, including their officers, agents, parents, affiliates, employees, and attorneys, and all those persons acting or attempting to act in concert or participation with them, including any related company and manufacturer of the Accused Products, from further acts of infringement of the '667 Patent;

C.  An Order and judgment permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, parents, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products, from using the Water Filter Mark and/or any other mark or design that is confusingly similar to the Water Filter Mark, and from manufacturing, using, selling, offering for sale, or importing any product compatible with BHRS's Avalon Coolers;

D.  An Order and judgment permanently enjoining Defendants, their officers, agents, parents, servants, employees, attorneys, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products, to modify all product and product design, packaging, and promotional material to eliminate use of the Water Filter Mark and any other design or mark that is confusingly similar to the Water Filter Mark;

E.  An Order and judgment permanently enjoining Defendants, their officers, agents,

parents, servants, employees, attorneys, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products, to deliver to the Court for destruction, or show proof of destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements, and any other materials in Defendants' possession or control that use the Water Filter Mark and any other design or mark that is confusingly similar to the Water Filter Mark;

F.    An Order and judgment permanently enjoining Defendants, their officers, parents, agents, servants, employees, attorneys, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products, to take all reasonably available steps to remove the Water Filter Mark and any other design or mark that is confusingly similar to the Water Filter Mark, as a designator of Defendants' products from any listing in any business directory, yellow pages, internet directory, social media, and any other listing service;

G.    An Order and judgment permanently enjoining Defendants, their officers, parents, agents, servants, employees, attorneys, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products, to (a) cease the sale and offer for sale of any products bearing the Water Filter Mark and any other design or mark that is confusingly similar to the Water Filter Mark, and any product compatible with BHRS's Avalon Coolers on any third party online retail platform, (b) remove or cause to be removed the listing for any such product from any third party online retail platform, (c) destroy or cause to be destroyed any product inventory in the possession, custody, or control of any third party online retail platform, and (d) deliver to the Court proof of destruction of any and all products.

H.      An Order and judgment permanently enjoining Defendants, their officers, parents, agents, servants, employees, attorneys, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products to (a) stop making any statements of compatibility with BHRS's coolers; and (b) take down any such statements of compatibility;

I.      An Order and judgment permanently enjoining Defendants, their officers, parents, agents, servants, employees, attorneys, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products to (a) stop making any statements of certification with NSF or ANSI standards; and (b) take down any such statements of certification;

J.      An Order and judgment permanently enjoining Defendants, their officers, parents, agents, servants, employees, attorneys, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products to (a) stop making any statements of the Accused Products having patent protection; and (b) take down any such statements of patent protection;

K.      An Order and judgment permanently enjoining Defendants, their officers, parents, agents, servants, employees, attorneys, successors and assigns, and all those persons in active concert or participation with any of them, including any related company and manufacturer of the Accused Products to (a) stop making any statements that the Accused Products completely remove lead; and (b) take down any such statements of complete lead removal;

L.      Award all damages as BHRS has sustained as a result of Defendants' conduct as complained of herein, and that said damages be trebled;

M.      An Order for an accounting of all profits realized by Defendants resulting from

their conduct complained of herein, and that such profits be paid over to BHRS, increased as the Court finds to be just under the circumstances of this case;

N.    An award of all damages as BHRS has sustained as a result of Defendants' conduct as complained of herein, including an award of actual, compensatory, and punitive damages, attorneys' fees, costs, and interest of this litigation as provided for by law;

O.    A judgment pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117 that this case against Defendants is an exceptional case and an award to BHRS of its reasonable attorneys' fees;

P.    Grant such other and further relief to BHRS as this Court may deem just and proper.

Dated: New York, New York
    April 24, 2026

/s/ Darren M. Geliebter
Darren M. Geliebter
Eric J. Huang (*pending pro hac vice*)
**LOMBARD & GELIEBTER LLP**
1325 Avenue of the Americas, 28th Fl.
New York, NY 10019
(212) 520-1172 (telephone)
(646) 349-5567 (facsimile)
dgeliebter@lombardip.com
ehuang@lombardip.com

*Attorneys for Plaintiff BHRS Group, LLC*